STATE OF NEW JERSEY, BY SALVATORE A. BONTEMPO, COMMISSIONER OF CONSERVATION AND ECONOMIC DEVELOPMENT, PLAINTIFF-RESPONDENT, v. SILVIO A. LANZA, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued April 2, 1963—Decided April 23, 1963.

*Mr. Jacob Green* argued the cause for defendants-appellants (*Mr. Donald M. Legow*, on the brief).

*Mr. Philip Lindeman, II* argued the cause for plaintiff-respondent (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney; *Mr. Bernard Hellring*, special counsel; *Mr. Norman Bruck* and *Mr. Philip L.. Chapman*, on the brief).

The opinion of the court was delivered

Per Curiam. In July 1957 the State of New Jersey instituted these condemnation proceedings to acquire 146.39 acres of land owned by defendant Silvio A. Lanza in Round Valley, Clinton Township, Hunterdon County, New Jersey. The tract, and others in the vicinity, were to be used in the construction of the Round Valley reservoir. The Law Division of the Superior Court appointed commissioners in November 1957 to value the land to be taken. *State by McLean v. Lanza*, 48 *N. J. Super.* 362 (*Law Div.* 1957). Lanza appealed claiming, among other things, that the legislation authorizing the acquisition of the Round Valley area was unconstitutional. This court held against him. *State by McLean v. Lanza*, 27 *N. J.* 516 (1958), appeal dismissed, 358 *U. S.* 333, 79 *S. Ct.* 351, 3 *L. Ed.* 2d 350 (1959), rehearing denied, 359 *U. S.* 932, 79 *S. Ct.* 606, 3 *L. Ed.* 2d 634 (1959).

The commissioners awarded Lanza $38,425. He appealed and after a 22-day trial without a jury in the Law Division, compensation for the taking was fixed at $57,623.93. The Appellate Division affirmed, 74 *N. J. Super.* 362 (*App. Div.* 1962) ; his appeal followed to this court.

About a year after the institution of this action, on June 24, 1958, Silvio Lanza executed a deed for an undivided one-

tenth interest in the land to his brother, Vito Lanza, a member of the bar of the State of New York, and a resident of that state. The deed was recorded on June 30, 1958. By notice dated June 23, 1958 (one day before the execution of the deed), Vito signed and subsequently served a "Notice of Claim and Notice of Appearance and Demand on Intervention" in the proceedings, alleging ownership of a one-tenth interest in the land. The notice simply alleged that he was a "co-owner and tenant in common of a one-tenth right, title and interest in and to all the property encompassed" in the condemnation proceeding. There was no reference to the date when, or the deed by which, the alleged interest was acquired. It was not supported by any affidavit or any pleading under *R. R.* 4:37–4. The State moved to expunge the appearance; Vito then sought to support his application to intervene by an affidavit which did no more than recite the execution of the deed. No facts were detailed as to the dates of execution or recording of the deed, the circumstances attending Silvio's giving of the deed, or the reason for, or the consideration for, the deed at that late date in the progress of the cause. In the argument of the matter, the Law Division judge inquired of Vito whether the facts surrounding the transaction were set out in affidavit form. Since Vito had been very much in evidence at all stages of the previous proceedings, particularly in regard to difficulties with Silvio's New Jersey counsel, obviously the court was seeking light as to whether the deed was merely a sham, a device to enable Vito to act as attorney in the case. Vito conceded the facts concerning the deed were not in affidavit form, but did not then or at any later time thereafter during the lengthy proceedings, when his application to intervene was renewed, present such an affidavit. On denial of the application for intervention, Vito appealed. On March 6, 1959 the Appellate Division dismissed the appeal for failure to file an adequate appendix and brief. *State by McLean v. Lanza,* 60 *N. J. Super.* 130 (*App. Div.* 1959).

In discussing the matter, the Appellate Division said:

"The present appeal was precipitated by the following circumstances. Vito, a New York lawyer and resident, has been advising and collaborating with Silvio, his brother, in connection with every phase of this case since its inception, including regular attendance at the current valuation trial. This has included participation in the engagement of and dealings with various New Jersey counsel who have represented Silvio in the matter since the beginning. There have been three or four of these in succession, and disagreements with counsel have been frequent. On June 30, 1958 (three days after the decision of the New Jersey Supreme Court cited above) there was recorded in the Hunterdon County Clerk's office a deed by Silvio, dated June 24, 1958, purporting to convey an undivided one-tenth interest in the lands in question to Vito. The revenue stamps on the deed indicate a consideration of $10,000. [In the brief filed in this court on the present appeal, in the "Statement of Facts" explaining the consideration for the deed, Vito says that over a period of time in connection with Silvio's alleged nursery business on the land, he advanced various sums "which eventually aggregated in excess of $4,000." He asserts that he expended time and effort in the management and improvement of the business. Again, the allegation is not in testimony or affidavit form. (Interpolation ours.)] Vito has told the court the consideration for the transfer consisted of past advances to Silvio. The representative of the Attorney General suggests that the conveyance is actually a subterfuge to enable Vito, a lawyer having no standing at the bar of this State, in effect to represent Silvio in this case through the guise of appearances *pro se* as a party. The past history of these proceedings, and even the papers filed in the present appeal, lend substantial color to the assertion, but we need not determine the question, in view of the present disposition of the appeals." 60 *N. J. Super.*, at *pp.* 132–133; see, also, *State by Bontempo v. Lanza*, 60 *N. J. Super.* 139 (*App. Div.* 1960).

On May 25, 1959 we denied an application for certification from the dismissal of the appeal "without prejudice to the renewal of the grounds sought * * * to be raised on appeal from final judgment." Trial of the compensation aspect of the case was proceeding in the Law Division during the processing of the appeal from the denial of intervention. It began on October 30, 1958 and was concluded on July 6, 1959, final judgment being entered in favor of Silvio Lanza for $57,623.93.

Silvio Lanza's appeal from the final judgment was joined in by Vito who again attacked the refusal of the Law Division

to grant him permission to intervene as a party defendant in the proceedings. As we have said, the Appellate Division sustained the trial court on all aspects of both appeals. As to Silvio Lanza, we affirm for the reasons stated in the Appellate Division opinion. See 74 *N. J. Super.* 362, 373–380. We affirm also the denial of Vito's application to intervene but do so on grounds other than those set forth in that opinion. The Appellate Division concluded that intervention should have been granted but the refusal occasioned no prejudice since Vito was "Silvio's close advisor and collaborator at all times in this entire litigation, before and after the denial of intervention. * * * He sat and conferred with Silvio's trial counsel at all times during the appeal hearing," and "we are not convinced from the record before us that the case would have gone substantially better for the Lanzas if Vito had appeared as a party in his own right rather than as the directing mind behind Silvio as defendant." 74 *N. J. Super.,* at *pp.* 372–373. We cannot agree that if Vito was entitled to intervene in his own interest, his active collaboration with Silvio's attorney during the proceedings can be considered equal in law to *pro se* participation in protection of his right as one-tenth owner of the premises. In our judgment, however, the record presented does not establish Vito's claimed right to intervene, under the applicable practice rules, *R. R.* 4:37–1, 3, 4, with sufficient clarity to warrant a finding that the trial court either erred as a strict matter of law or abused its discretion in denying the motion.

Vito had been in the case informally from its inception. The unsworn facts asserted as the basis for the deed to him of a one-tenth undivided share in the land, if true, existed prior to the institution of the condemnation proceedings. The interest of the State in Round Valley as a reservoir was common knowledge for a considerable period of time. And the legislation authorizing acquisition of the "area commonly known as Round Valley" became effective July 1, 1956, *L.* 1956, *c.* 60, *N. J. S. A.* 58:20–1 *et seq.,* a year before this proceeding was begun. No satisfactory explanation has ever

been furnished as to why after this suit had been in progress for a year, Silvio suddenly decided to deed the small undivided interest to Vito. It is plain from the record that the brothers had not been able to get along with their various attorneys. In the absence of sworn proof as to the reason for the deed, strong suspicion arises as to the good faith of the transaction, and whether it was not done solely to precipitate Vito into the case as a party and attorney *pro se*. It cannot go unnoticed that the Law Division judge who first heard the motion to intervene advised Vito (who was allowed to argue the matter personally) that he would not consider oral statements that an alleged indebtedness of Silvio to Vito provided the consideration for the deed. They would have to be in affidavit form. See, *R. R.* 4:44–4. Yet no leave was sought to file such affidavit, nor was it supplied to the actual trial judge on subsequent occasions when the motion to intervene was renewed.

■■ Grant of permission to intervene in an action is committed in the first instance to the trial court. Ordinarily such applications are treated liberally there. But this case was attended with difficulties, delays and conduct which at the trial level were deemed sufficient to require clear proof of justification for the motion to intervene. See, *e. g., State by Bontempo v. Lanza, supra* (60 *N. J. Super.*, at *p.* 143). Our own examination of the total circumstances of the case satisfies us we should not interfere with the considered judgment of the trial judges that a case for intervention was not adequately made out under *R. R.* 4:37–1, 3, 4, or *R. R.* 4:44–4.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—None.